UNITED STATES DISTRICT COURT
EASTERN DISCTRICT OF NEW YORK
--------------------------------------------------------------X          Case No.
NATHASHA KRUMBIEGEL, individually and on
behalf of all others similarly situated,

                         Plaintiff,

                                                                **CLASS AND COLLECTIVE
                                                                ACTION COMPLAINT**

          -against-


RED RIVER INN INC., and RICK TRIPI,                             **Jury Trial Demanded**

                              Defendants.
--------------------------------------------------------------X


     Plaintiff Nathasha Krumbiegel ("Krumbiegel" or "Plaintiff") alleges on behalf of herself

and all others similarly situated, against Red River Inn Inc. ("Red River") and Rick Tripi ("Tripi")

(collectively, "Defendants"), upon information and belief, as follows:

## <u>NATURE OF THE CLAIMS</u>

     1.    Red River operates as restaurant and bar that sells food and drink, including

alcoholic beverages, to the public for consumption on its premises, pickup, and/or delivery.

     2.    From approximately August 3, 2019, to April 26, 2021, Plaintiff was employed by

Defendants as a server/bartender.

     3.    Throughout her employment with Red River, Plaintiff was a reliable and diligent

worker with no record of disciplinary action.

     4.    Defendants maintained a pattern and practice of failing to pay Plaintiff and other

non-exempt employees, including servers and bartenders, the minimum wage rate for all hours

worked, the overtime rate of one-and-one half (1 ½) times the regular hourly rate/applicable

minimum wage rate for all hours worked in excess of forty per week, spread-of-hours pay for each workday their shift or shifts exceeded 10 hours per day, and all tips to which they were entitled.

5.     Defendants regularly paid Plaintiff and other servers and bartenders either no wages or a nominal, flat per-shift wage, leaving Plaintiff and other servers and bartenders to derive all or nearly all of their compensation from customer tips.  Defendants further unlawfully retained tips earned by Plaintiff and other servers and bartenders by permitting Tripi's participation in a tip pool, despite his position as the owner of Red River and manager of Plaintiff and other servers and bartenders.  This payroll scheme is an obvious and willful avoidance of Defendants' obligation to pay minimum wage, overtime, and all tips to which employees are entitled, as required under state and federal law, and spread-of-hours pay under state law.

6.     Defendants also failed to furnish annual wage notices and wage statements and failed to maintain an accurate record keeping of hours worked and wages paid to Plaintiff and similarly situated employees.

7.     Defendants have systematically and repeatedly ignored the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the New York Labor Law § 190, *et seq.* ("NYLL").  Plaintiff, on behalf of herself and similarly situated employees, seeks relief for Defendants' unlawful actions, including compensation for unpaid minimum wages, overtime wages, spread-of-hours pay, unlawfully retained tips, liquidated damages, pre- and post-judgment interest, statutory damages for Defendants' notice violations, and attorneys' fees and costs, pursuant to the FLSA and NYLL.

8.     Plaintiff further seeks to recover damages to redress the injuries she suffered as the result of being retaliated against by Defendants for complaining about Defendants' improper pay practices, in violation of NYLL § 215.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 as Red River maintains its principal place of business in this district and a substantial part of the events or omissions giving rise to the instant claims occurred in this district

11.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff Krumbiegel**

12.     Plaintiff was and is a resident of Suffolk County, New York.

13.     From approximately August 3, 2019, to April 26, 2021, Plaintiff worked as a server/bartender at Red River.

14.     For the duration of her employment with Defendants, Plaintiff was an employee engaged in commerce or the production of goods for commerce on behalf of Defendants.

15.     By way of example, during her employment with Defendants, Plaintiff served food items and prepared and served alcoholic beverages sold to customers containing ingredients that were produced outside of New York State and transported via interstate commerce.

16.     At all times relevant to this action, Plaintiff was an employee of Defendants within the meaning of the FLSA and NYLL.

**Defendant Red River**

17. Red River Inn Inc., was and is a domestic business corporation organized and existing under the laws of New York, with its principal place of business located at 450 Main Street, Yaphank, New York 11980.

18. Red River is a business or enterprise engaged in interstate commerce within the meaning of the FLSA.

19. Red River has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

20. Red River has an annual gross volume of sales in excess of $500,000.

21. At all times relevant to this action, Red River has been an employer of Plaintiff within the meaning of the FLSA and NYLL.

**Defendant Rick Tripi**

22. Rick Tripi, upon information and belief, was and is a resident of State of New York.

23. At all times relevant to this action, Tripi served as a principal, officer, owner and/or manager of Red River.

24. At all times relevant to this action, Tripi was Plaintiff's supervisor and/or manager during Plaintiff's employment with the Defendants.

25. Tripi possesses or possessed an ownership interest in, operational control over, policy making authority at, and/or significant authority over the day-to-day operations of Red River.

26. Tripi exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and

personnel policies, maintain employment records, and determine terms and conditions of employment of Plaintiff, the FLSA Collective and the Rule 23 Class.

27.     Employees of Red River could complain to Tripi directly regarding any of the terms of their employment, and Tripi would have the authority to effect any changes to the quality and terms of their employment.

28.     The acts of Red River charged in this Complaint were authorized, directed, or accomplished by Tripi individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of Red River.

29.     Tripi is personally and jointly and severally liable for the violations of the FLSA and NYLL by Red River.

## FLSA COLLECTIVE ALLEGATIONS

30.     Plaintiff bring claims for relief as a collective action pursuant to the FLSA, 29 U.S.C § 216(b), on behalf of all non-exempt employees of Red River, including servers and bartenders, employed by Defendants at any time from three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective").

31.     The FLSA Collective consists of approximately forty (40) similarly situated current and former non-exempt employees of Red River, who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA, *inter alia*, as a result of Defendants' denying them minimum wage, overtime pay, and other monies.

32.     As part of their regular business practices, Defendants have intentionally, willfully, repeatedly, and in bad faith harmed Plaintiff and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, the following:

a. Failing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked;

b. Failing to pay Plaintiff and the FLSA Collective the proper overtime pay for all hours worked over forty hours per week; and

c. Unlawfully retaining tips earned by and rightfully due to Plaintiff and the FLSA Collective.

33. Defendants have engaged in this unlawful conduct pursuant to a policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

34. Defendants' unlawful conduct has been intentional, willful, in bad faith and has caused damage to Plaintiff and the FLSA Collective.

35. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable by Defendants, and are locatable through Defendants' records, which Defendants are required to maintain pursuant to the FLSA and NYLL. These similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

36. Plaintiff brings claims for relief as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class consisting of themselves and all current and former non-exempt employees of Red River, including but not limited to servers and bartenders, at any time six years prior to the filing of this action through the entry of judgment in this action (the "Rule 23 Class").

37.     The persons in the Rule 23 Class are so numerous that joinder of all members is impracticable.  The exact number of the Rule 23 Class is unknown to Plaintiff at this time, but there are believed to be 80 such persons.

38.     The identities of the Rule 23 Class members are known to the Defendants and are contained in the employment records that the Defendants are required to create and maintain pursuant to the FLSA and NYLL.

39.     Commons questions of law and fact exist as to all members of the Rule 23 Class that predominate over any questions affecting solely individual members.  Among the questions of law and fact common to the Rule 23 Class are:

a.      Whether Defendants failed to pay the Rule 23 Class minimum wage for each hour worked;

b.      Whether Defendants failed to pay the Rule 23 Class overtime compensation at a rate of one-and-one-half times their regular hourly rate/applicable minimum wage rate for all hours worked over 40 in a workweek in violation of the NYLL;

c.      Whether Defendants failed to pay the Rule 23 Class spread-of-hours pay for each workday that a shift or shifts exceeded 10 hours per day;

d.      Whether Defendants unlawfully retained tips earned by and rightfully due to the Rule 23 Class;

e.      Whether Defendants failed to furnish the Rule 23 Class with an accurate statement of all wages, hours worked, rates paid, and gross wages as required by the NYLL and supporting regulations;

f.      Whether Defendants failed to furnish the Rule 23 Class with wage notices as required by the NYLL and supporting regulations; and,

g.      Whether Defendants failed to keep true and accurate pay records, records for all hours/shifts worked by the Rule 23 Class, and other records required by the NYLL.

40.     The claims of Plaintiff are typical of the claims of the Rule 23 Class she seeks to represent.  Plaintiff and the Rule 23 Class work or have worked for Defendants within the six years prior to the filing of this action. They enjoy the same statutory rights under the NYLL to be paid

the correct minimum wage, to be paid overtime wages for all hours worked in excess of 40 in a workweek, to be paid spread-of-hours pay for workdays that their shift or shifts exceeded 10 hours per day, to receive all tips to which they earned and were entitled, to be given wage notices at the time of hire and annually, and to be issued complete and accurate wage statements along with each payment of wages. Plaintiff and the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

41.     Plaintiff and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

42.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

43.     Plaintiff has retained counsel competent and experienced in wage and hour litigation and class action litigation.

44.     There are no conflicts between Plaintiff and the Rule 23 Class members.

45.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices and procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

46.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

47.     On or around August 3, 2019, Plaintiff commenced employment at Red River.

48.     Plaintiff worked at Red River from on or around August 3, 2019, until on or around April 26, 2021.

49.     For the duration of her employment with Red River, Plaintiff worked at the Red River restaurant location—450 Main Street, Yaphank, New York 11980.

50.     For the duration of her employment with Red River, Plaintiff directly reported to Tripi.

51.     Red River maintains and serves food at both tabletops and a large bar area in the restaurant.

52.     For the duration of Plaintiff's employment with Red River, Defendants designated certain employees as "servers", who were primarily or exclusively responsible for serving food and drink to patrons sitting at the restaurant's tables.

53.     For the duration of Plaintiff's employment with Red River, Defendants designated certain employees as "bartenders", who were primarily responsible for serving food and drink to patrons sitting at the restaurant's bar areas.

54.     For the duration of her employment with Red River, Plaintiff was employed as a server/bartender.

55.     In her capacity as a server/bartender, Plaintiff's duties and responsibilities included, but were not limited to: taking food and drink orders, serving food, preparing and serving alcoholic

drinks, cleaning the bar area, busing and cleaning tables, restocking bar supplies from the basement, and processing customer payment.

56.     During her employment with Defendants, Plaintiff was primarily responsible for serving food and drink to patrons sitting at the bar areas; however, Plaintiff was frequently required to serve patrons sitting at the restaurant's tables.

57.     For the duration of her employment with Defendants, Plaintiff reported to Tripi.

58.     For the duration of her employment with Defendants, Plaintiff satisfactorily performed her duties and responsibilities.

59.     For the duration of her employment with Defendants, whenever Plaintiff worked the night shift—beginning at 6:30 p.m.—she worked until closing.

60.     For the duration of Plaintiff's employment with Defendants, Tripi did not close Red River at any set time but rather kept the restaurant open until the last customer left.

61.     As a result of Defendants' policy to keep Red River open until the last customer left, during Plaintiff's employment with Defendants, Red River usually closed around 3:00 a.m. on Mondays through Thursdays, around 4:00 a.m. on Fridays, and around 6:00 a.m. on Saturdays and Sundays.

62.     From on or around August 3, 2019, until November 7, 2020—the last day Plaintiff worked for Defendants before giving birth—Plaintiff generally worked either of the following schedules, approximately two or three weeks each per month, for Defendants:

a.     Wednesday 6:30 p.m.-Thursday 3:00 a.m. (8.5 hours)
        Thursday 6:30 p.m.-Friday 4:00 a.m. (9.5 hours)
        Friday 6:30 p.m.-Saturday 6:00 a.m. (11.5 hours)
        Saturday 6:30 p.m.-Sunday 6:00 a.m. (11.5 hours)
        Sunday 3:30 p.m.-Monday 3:00 a.m. (11.5 hours); or

b.     Wednesday 6:30 p.m.-Thursday 3:00 a.m. (8.5 hours)
        Thursday 6:30 p.m.-Friday 4:00 a.m. (9.5 hours)

Friday 6:30 p.m.-Saturday 6:00 a.m. (11.5 hours)
Saturday 11:30 a.m.-Sunday 6:00 a.m. (18.5 hours)

63.　　From on or around January 9, 2021—the first day she returned to work from Defendants after giving birth—until on or around January 31, 2021, Plaintiff did not work the shift commencing Wednesday evening and ending Thursday morning, but otherwise worked the same schedule as prior to her maternity leave period.

64.　　In or around late-January 2021, Tripi advised Plaintiff that she would be working the Sunday afternoon shift every week.

65.　　As a result, beginning on or around February 1, 2021, until on or around April 26, 2021—the last day she worked for Defendants—generally worked either of the following schedules, approximately two or three weeks each per month, for Defendants:

a.　　Thursday 6:30 p.m.-Friday 4:00 a.m. (9.5 hours)
　　　Friday 6:30 p.m.-Saturday 6:00 a.m. (11.5 hours)
　　　Saturday 6:30 p.m.-Sunday 6:00 a.m. (11.5 hours)
　　　Sunday 3:30 p.m.-Monday 3:00 a.m. (11.5 hours); or

b.　　Thursday 6:30 p.m.-Friday 4:00 a.m. (9.5 hours)
　　　Friday 6:30 p.m.-Saturday 6:00 a.m. (11.5 hours)
　　　Saturday 11:30 a.m.-Sunday 6:00 a.m. (18.5 hours)
　　　Sunday 3:30 p.m.-Monday 3:00 a.m. (11.5 hours)

66.　　For the duration of her employment with Defendants, Defendants did not provide Plaintiff with any meal breaks, during which she was not required to—and did not—perform work for Defendants.

67.　　For the duration of her employment with Defendants, Defendants did not pay Plaintiff any wages for her work.

68.　　During her employment with Defendants, Plaintiff's only remuneration was the tips she received from customers.

69.    On multiple occasions—particularly on her Wednesday shifts (ending Thursday morning), when the restaurant was slow—Plaintiff worked a full shift and received no pay at all.

70.    For the duration of Plaintiff's employment with Defendants, Defendants permitted Plaintiff to keep tips paid to her in cash, and Tripi paid her in cash for a portion of the total credit card tips each server and bartender received at the end of every shift.

71.    During Plaintiff's employment with Defendants, she earned (but did not necessarily receive) approximately $400 per week in tips for the weeks she did not work a Sunday afternoon-Monday morning shift, and $525 per week in tips for the weeks she worked a Sunday afternoon-Monday morning shift.  For the weeks she worked the Saturday morning-Sunday morning double shift, because the bar was usually slow during Saturday afternoons, Plaintiff rarely earned more tips than when she worked a single Saturday night-Sunday morning shift.

72.    For the duration of Plaintiff's employment with Defendants, aside from her maternity leave period and the months of June 2020 and August 2020, Plaintiff did not receive all of the tips she earned because, approximately once per week (when the restaurant was busy, usually during the weekend), Tripi retained half of Plaintiff's tips for himself.

73.    In June 2020 and August 2020, Defendants were short-staffed behind the bar, and Tripi spent more time "helping out" during Plaintiff's shifts.  As a result, during these two months, Tripi retained half of Plaintiff's tips approximately twice per week (usually, both weekend days).

74.    For shifts in which Tripi retained Plaintiff's tips, Tripi justified retaining half of Plaintiff's tips by performing a nominal amount work behind the bar—such as serving a single, bottled beer to a customer.

75.    When Tripi took half of Plaintiff's tips—on Plaintiff's busier nights—she would earn between $150 and $300 in tips, but she received only half—between $75 and $150.

76. At all times relevant to this action, Tripi was the owner and a manager of Red River and was thus ineligible to participate in a tip pool.

77. Tripi's policy and practice of retaining a portion of the tips earned by servers and bartenders at Red River applied not only to Plaintiff, but to the FLSA Collective and Rule 23 Class, as well.

78. Upon information and belief, as tips represented all or nearly all of the compensation received by servers and bartenders employed by Red River, Tripi's policy and practice of retaining part of the tips earned by Red River servers and bartenders caused several servers and bartenders to quit.

79. On several occasions during her employment with Defendants, Plaintiff complained about Defendants' unlawful pay practices.

80. In or around November 2019, after having worked a Wednesday during which she received no tips (and thus, no pay), Plaintiff complained to Tripi about not receiving any pay for that shift. Plaintiff asked Tripi for shift pay—or, at minimum, money for an Uber to return home, as she did not have a car during this time and was paying for an Uber to take her to and from work. Tripi responded, **"You make tips. You don't get shift pay."**

81. Plaintiff continued to request to be paid a regular wage for the hours she worked, but Tripi continued to refuse her requests. Shortly before she took her maternity leave, in response to her persistent requests, Tripi offered to pay Plaintiff $60 per shift—still well below the minimum wage—if she went "on the books". However, before Tripi put Plaintiff "on the books", Plaintiff went out on maternity leave.

82. After she returned from maternity leave, Tripi further reduced his sub-minimum wage offer of shift pay—from $60 per shift, to $100 per week—to go "on the books".

83.     Plaintiff could not accept this arrangement, as it would have significant consequences for her eligibility for and ability to afford health insurance coverage, which was essential in light of the postpartum medical needs of Plaintiff and Plaintiff's newborn child.

84.     Tripi continued to pressure Plaintiff into accepting the nominal "on the books" pay, but Plaintiff demurred.

85.     On April 26, 2021, Tripi approached Ms. Plaintiff and told her, "If you won't go on the books for $100 per week, don't come back."

86.     Plaintiff replied by again telling Tripi she wanted to be paid regular shift pay for all the shifts she worked.

87.     When Plaintiff asked Tripi if she should come into work the next week, Tripi told her, "No," effectively terminating Plaintiff's employment.

88.     Plaintiff's last day of work for Defendants was April 26, 2021.

89.     Defendants terminated Plaintiff's employment in retaliation for her complaints of, and opposition to, Defendants' unlawful pay scheme.

90.     For the duration of her employment with Defendants, Defendants failed to pay Plaintiff the applicable minimum wage rate in accordance with the FLSA and NYLL.

91.     Defendants never notified Plaintiff of their intention to take a tip credit against her wages.

92.     For the duration of her employment with Defendants, Plaintiff regularly worked more than 40 hours per week but was not paid overtime pay at one-and-one-half times the applicable rate by Defendants.

93.     For the duration of her employment with Defendants, Plaintiff regularly worked more than 10 hours in a day but was not paid spread-of-hours pay.

94. Defendants failed to keep accurate records of wages earned or hours worked by Plaintiff.

95. For the duration of her employment with Defendants, Defendants did not provide Plaintiff with a wage notice setting forth her rate of pay and basis thereof, exempt status, overtime rate, method of compensation, regular payday, names of her employers (including fictitious names), addresses and phone numbers for her employers' main offices or principal locations, or any allowances taken.

96. For the duration of Plaintiff's employment with Defendants, Defendants failed to furnish Plaintiff with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

97. Plaintiff received her earned tips (less any tips retained by Tripi)—the only compensation she received—at the end of each shift, in cash, with no accompanying statement indicating her hourly rate, the number of hours she worked, overtime hours worked, or the amount of a tip credit—if any—Defendants asserted against her wages.

98. Defendants knowingly and willfully violated the FLSA and NYLL with respect to Plaintiff's employment.

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Unpaid Minimum Wage**
**(On Behalf of Plaintiff and the FLSA Collective)**

99. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

100. Defendants were required to pay Plaintiff and the FLSA Collective the applicable federal minimum wage rate.

101. Defendants failed to pay Plaintiff and the FLSA Collective the minimum wages to which they are entitled under the FLSA.

102. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

103. Defendants' violations of the FLSA described above have been willful and therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

104. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**New York Labor Law – Unpaid Minimum Wage**
**(On Behalf of Plaintiff and the Rule 23 Class)**

105. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

106. Defendants failed to pay Plaintiff and the Rule 23 Class the minimum wages to which they are entitled under the NYLL.

107. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff and the Rule 23 Class minimum hourly wages.

108. As a result of Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

**THIRD CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime**
**(On Behalf of Plaintiff and the FLSA Collective)**

109. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

110. Defendants are employers within the meaning of 29 U.S.C §§ 203(e) and 206(a) and employed Plaintiff.

111. Defendants were required to pay Plaintiff and the FLSA Collective one and one-half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours worked in excess of 40 hours in a workweek.

112. Defendants failed to pay Plaintiff and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

113. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective overtime wages.

114. Defendants' violations of the FLSA described above have been willful, and therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

115. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (On Behalf of Plaintiff and the Rule 23 Class)

116.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

117.     Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff and other non-exempt employees one and one half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours they worked in excess of forty (40) hours per week.

118.     Defendants failed to pay Plaintiff and the Rule 23 Class the overtime wages to which they were entitled under the NYLL.

119.     Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff and the Rule 23 Class overtime wages.

120.     As a result of Defendants willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

## FIFTH CAUSE OF ACTION
### Fair Labor Standards Act – Unlawful Retention of Tips
### (On Behalf of Plaintiff and the FLSA Collective)

121.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

122.     29 U.S.C. § 203(m)(2)(B) states, "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

123. Tripi was an "employer" of Plaintiff and the FLSA Collective under the meaning of the FLSA and therefore, was prohibited from participating in a tip pool or otherwise retaining tips earned by Defendants' employees.

124. Notwithstanding this prohibition, Tripi retained tips earned by Plaintiff and the FLSA Collective.

125. Defendants violated the FLSA by knowingly and intentionally allowing Tripi to retain tips earned by Plaintiff and the FLSA Collective.

126. Defendants' violations of the FLSA described above have been willful, and therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

127. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover from Defendants their unlawfully retained tips, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

### SIXTH CAUSE OF ACTION
**New York Labor Law – Unlawful Retention of Tips**
**(On Behalf of Plaintiff and the Rule 23 Class)**

128. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

129. Pursuant to N.Y. Comp. Code R. & Regs. Tit. 12 §§ 146-2.2 and 146-1.3, an employer may only take a tip credit towards an employee's basic minimum wage if the employer notifies the employee of, *inter alia*, the intention to take the tip credit and the amount of the tip credit.

130. NYLL § 196-d states, "No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the

gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

131.    Defendants never provided Plaintiff and the Rule 23 class with notice of their intent to take a tip credit.

132.    Tripi was an "employer" of Plaintiff and the Rule 23 Class under the meaning of the NYLL and therefore, was prohibited from participating in a tip pool or otherwise retaining tips earned by Defendants' employees.

133.    Notwithstanding this prohibition, Tripi retained tips earned by Plaintiff and the Rule 23 Class.

134.    Defendants violated the NYLL by knowingly and intentionally allowing Tripi to retain tips earned by the Plaintiff and the Rule 23 Class.

135.    As a result of Defendants willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unlawfully retained tips, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

### SEVENTH CAUSE OF ACTION
**New York Labor Law – Unpaid Spread-of-Hours**
**(On Behalf of Plaintiff and the Rule 23 Class)**

136.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

137.    Defendants have willfully failed to pay Plaintiff and the Rule 23 Class additional compensation of one hour's pay at the minimum hourly wage rate in all instances where Plaintiff and the Rule 23 Class worked either a split shift or more than 10 hours per day, in violation of NYLL §§ 650, *et seq.* and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12 §§, 137-1.7 (2010), 146-1.6 (2012).

138.     As a result of Defendants willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover unpaid spread-of-hours compensation, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to the NYLL.

## EIGHTH CAUSE OF ACTION
### New York Labor Law – Wage Theft Prevention Act Notice Violations
### (On Behalf of Plaintiff and the Rule 23 Class)

139.     Plaintiff repeat and realleges all foregoing paragraphs as if fully set forth herein.

140.     NYLL § 195(1)(a) obligates every employer to: "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years."

141.     Defendants failed to provide Plaintiff and the Rule 23 Class with wage notices compliant with NYLL § 195(1)(a).

142. Due to Defendants' violations of NYLL § 195(1), Plaintiff and the Rule 23 Class are each entitled to statutory penalties of $50.00 for each workday that Defendants failed to provide wage notices, up to a maximum of $5,000 each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided by NYLL § 198(1-b)

143. Defendants violated NYLL § 195(3) by failing to furnish Plaintiff and the Rule 23 Class with each payment of wages and accurate statement listing the dates of work covered by that payment or wages; name of employee; name of employer; address and phone number of employer; rate of rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages, deductions, allowances, if any, claimed as part of the minimum wage; and net wages.

144. Through their failure to provide Plaintiff and the Rule 23 Class with wage statements as required by the NYLL, Defendants have violated NYLL § 190, *et seq*. and the supporting New York State Department of Labor Regulations.

145. Due to Defendants' violations of NYLL § 195(3), Plaintiff and the Rule 23 Class are each entitled to statutory penalties of $250.00 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of $5,000 each, plus reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

### NINTH CAUSE OF ACTION
### New York Labor Law – Recording Keeping Violations
### (On Behalf of Plaintiff and the Rule 23 Class)

146. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

147. At all times relevant to this action, Defendants were and are required to establish, maintain, and preserve for not less than six years, weekly payroll records that show for each

employee, among other information, true and accurate payroll records and the number of hours worked daily and weekly, including the time of arrival and departure of each employee. NYLL § 195(4); 12 N.Y.C.R.R. § 142-2.6.

148. Defendants violated the applicable NYLL and NYCRR provisions by not maintaining and preserving payroll records and the time of arrival and departure of Plaintiff and the Rule 23 Class.

## TENTH CAUSE OF ACTION
### Fair Labor Standards Act – Retaliation
### (On Behalf of Plaintiff)

149. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

150. Plaintiff was an employee of Defendants within the meaning of the FLSA.

151. Defendants were employers of Plaintiff within the meaning of the FLSA.

152. 29 U.S.C. § 215(a)(3) prohibits any person, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

153. While employed by Defendants, Plaintiff complained to Defendant about Defendants' unlawful employment practices, including Defendants' failure to pay Plaintiff the minimum wage.

154. Plaintiff's complaints constitute protected activity under the FLSA.

155. After and as a result of Plaintiff's complaints, Defendants terminated Plaintiff's employment.

156.     A causal connection exists between Plaintiff's complaints of Defendants' unlawful pay practices—including Defendants' failure to pay her the minimum wage—and Defendants' termination of Plaintiff's employment.

157.     Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff's employment in retaliation for Plaintiff's complaints of Defendants' unlawful pay practices.

158.     Due to Defendants' violations of 29 U.S.C. § 215(a)(3), Plaintiff is entitled to recover her lost wages and other compensatory damages, liquidated damages in an amount equal to her lost wages, pre-judgment and post-judgment interest, along with reasonable attorneys' fees, costs and injunctive and declaratory relief.

### ELEVENTH CAUSE OF ACTION
### New York Labor Law – Retaliation
### (On Behalf of Plaintiff)

159.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

160.     Plaintiff was an employee of Defendants within the meaning of the NYLL.

161.     Defendants are employers of Plaintiff within the meaning of the NYLL.

162.     NYLL § 215(1) states, in part, "No employer or his or her agent, or the officer of agent of any corporation, partnership, or limited liability company…shall discharge, threaten, penalize or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…or his or her authorized representative…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…[or] (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter…or (v) because such employee has otherwise exercised rights protected under this chapter…"

163.     While employed by the Defendants, Plaintiff complained to the Defendants about Defendants' unlawful practices, policies and procedures of not being paid proper wages, including Defendants' failure to pay Plaintiff minimum wages.

164.     Plaintiff's complaints to Defendants constitute protected activity under NYLL § 215.

165.     A causal connection exists between Plaintiff's complaints of improper pay practices and Defendants' decision to terminate Plaintiff's employment.

166.     Defendants violated NYLL § 215 by retaliating against Plaintiff by terminating her employment due to her complaints about Defendants' unlawful pay practices, policies and procedures, including Defendants' failure to pay her minimum wages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court grant the following relief:

A. Designating this action as a collective action on behalf of the FLSA Collective and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated non-exempt employees and appointing Plaintiff and their counsel to represent the FLSA Collective.  Such notice shall inform them that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages;

B. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Rule 23 Class and appointing Plaintiff and their counsel to represent the class;

C. Issuing an order tolling the statute of limitations;

D. Issuing a declaratory judgment that the practices complained of herein are unlawful under applicable state and federal law;

E. Declaring that Defendants have violated the minimum wage provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

F. Declaring that Defendants violated the overtime provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

G. Declaring that Defendants violated the provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations prohibiting employer retention of tips;

H. Declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

I. Declaring that Defendants violated the notice provisions of the NYLL and Wage Theft Prevention Act;

J. Declaring that Defendants terminated Plaintiff's employment due to her complaints of, and opposition to, Defendants' unlawful pay practices, policies and procedures, including Defendants' failure to pay Plaintiff minimum wages, and awarding Plaintiff a recovery for damages sustained;

K. Enjoining future violations of the FLSA and NYLL by Defendants;

L. Declaring that Defendants' violations of the FLSA and NYLL were willful;

M. Awarding Plaintiff, the FLSA Collective, and the Rule 23 Class unpaid minimum wages;

N. Awarding Plaintiff, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

O. Awarding Plaintiff, the FLSA Collective and the Rule 23 Class compensation for unlawfully retained tips;

P. Awarding Plaintiff and the Rule 23 Class unpaid spread-of hours compensation;

Q. Awarding Plaintiff and the Rule 23 Class statutory penalties for Defendants failure to furnish wage notices and/or pay statements pursuant to the NYLL;

R. Awarding Plaintiff, the FLSA Collective, and the Rule 23 Class liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA and NYLL;

S. Awarding Plaintiff compensatory damages, pursuant to the FLSA and/or NYLL, retroactive to the date of her termination, for all lost wages and benefits sustained as a result of Defendants' retaliatory conduct after and as a result of Plaintiff's complaints of and/or opposition to Defendants' unlawful pay practices;

T. Awarding Plaintiff liquidated and/or punitive damages pursuant to the FLSA and/or NYLL due to Defendants' violations of those statutes as a result of Defendants'

retaliatory conduct after and as a result of Plaintiff's complaints of and/or opposition to Defendants' unlawful pay practices;

U. Awarding Plaintiff, the FLSA Collective, and the Rule 23 Class reasonable attorney's fees, costs, and expenses of the action under the FLSA and NYLL; and,

V. Awarding Plaintiff, the FLSA Collective, and the Rule 23 Class pre-judgment and post-judgement interest under the FLSA and NYLL; and

W. Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  April 12, 2022
        New York, New York

**AKIN LAW GROUP PLLC**

*/s/ Justin Ames*

_____
Justin Ames, Esq.
45 Broadway, Suite 1420
New York, NY 10006
Telephone: (212) 825-1400
Facsimile: (212) 825-1440
Email: justin@akinlaws.com
*Attorneys for Plaintiff*